[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 13, 2000
THOMAS K. KAHN
CLERK

_____

No. 98-3380

_____

D. C. Docket No. 95-01544-CV-T-17(B)

ANDREA D. LEE,

Plaintiff-Appellee-
Cross-Appellant,

versus

GTE FLORIDA, INC.,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(September 13, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and HANCOCK[*], District Judge.

PER CURIAM:

Defendant GTE Florida appeals from the district court's denial of its Rule 50(b) motion for judgment as a matter of law as to Plaintiff Andrea Lee's Title VII sex discrimination claim. Lee cross-appeals the district court's reversal of the jury's punitive damages award and its award of only two years of front pay. Because the evidence Lee presented at trial to prove pretext was not legally sufficient to support a jury verdict in her favor, the district court erred in denying GTE's motion for judgment as a matter of law and we reverse. In light of this ruling, the cross appeal is moot.

## I.

On September 18, 1995, Lee sued GTE alleging sex discrimination under Title VII and Florida law arising out of a failure to promote, retaliatory termination under Title VII and the ADEA, and a violation of ERISA. After the magistrate judge granted GTE's motion for partial summary judgment, Lee's only remaining cause of action was whether she was denied a promotion to the position of Manager-Real Estate Services because of her sex and/or age.

---

[*]Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

This matter was tried before a jury in December 1997. Immediately after Lee rested her case, GTE moved for judgment as a matter of law pursuant to Fed. R. Civ. Pro. 50(a). The court denied the motion. Thereafter, GTE rested without calling any witnesses, again renewing its Motion for Judgment as a Matter of Law. The court again denied the motion but observed that Lee's evidence was "paper thin." The jury returned a verdict finding intentional sex discrimination and awarded Lee back pay, including pension benefits and punitive damages. But the jury found for GTE on Lee's ADEA claim.

Soon thereafter, GTE renewed its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial, and on April 3, 1998, the court granted in part and denied in part the motion. The court upheld the jury's verdict on Lee's sex discrimination claim, as well as the award of back pay, including pension benefits. However, it reversed the jury's award of punitive damages. The court entered judgment for Lee in the amount of $216,000. Later, the court added an award for front pay, in the amount of $98,647, and for attorney's fees and costs in the amount of $100,000. The total amount awarded to Lee was $414, 647.

II.

The facts of this case are straightforward. Andrea Lee was first hired by GTE as an operator in Tampa, Florida, in June 1970. In December 1970 she was

promoted to a facilities clerk position, and in December 1972 she was again promoted to an engineer position in GTE's Real Estate Division in Tampa. Lee's engineering position carried a salary level of "4." In January 1980 Lee was promoted to a senior engineering position in GTE's Real Estate Services at a salary level of "5." Lee held this position until November 6, 1994, when her job was eliminated as a result of a reduction in force.

In the early 1990s GTE implemented a reduction in force plan called Process Reengineering. As a result of the reengineering, many positions were either eliminated or consolidated into other positions. Lee's position of Engineer-Real Estate was eliminated and six other individuals who held the same position in other parts of the country also lost their jobs.

As part of the company reorganization, Tom Shaffer, a member of the Process Reengineering task force, created three new positions with the title of Manager-Real Estate Services. Shaffer divided the country into three equal zones, making one position responsible for the Western U.S., the second position responsible for the Central U.S., and the third position, located in Tampa, responsible for the Eastern U.S.

Employees whose jobs were to be eliminated because of the reengineering process were given an opportunity to apply for other positions within GTE. In

March 1994, Lee applied for the Manager-Real Estate Services position that was responsible for the Eastern U.S.[1] In order to fill the Manager-Real Estate Services positions, Shaffer created a Position Questionnaire. The Questionnaire described the experience and qualifications relevant for the position, in descending order of importance: 1) managerial experience; 2) strategic planning experience; 3) a Bachelor's degree in business or engineering; and 4) commercial real estate experience.

Shaffer interviewed Andrea Lee, along with several other candidates, for the Manager-Real Estate Services East position. During Lee's interview, Shaffer told her not to discuss her background and qualifications because he already knew them. According to Lee, Shaffer also expressed concern about any employee making a salary level jump from a level "5" (the level which Lee held) to a level "9" (the new level established for the Manager-Real Estate position). Shaffer said that he had never promoted anyone four salary levels at one time and that he had never promoted someone to a level "9" position with no supervisory experience. Shaffer also told Lee that her real estate experience was a low priority to him since that function was going to be outsourced.

---

[1] Lee indicated she was not willing to move from Tampa, and therefore applied only for the Manager-Real Estate Services East position.

Neither Lee nor her immediate supervisor, Bob Atteberry, who also applied for the position, were selected for the position. Shaffer testified that he ultimately chose Colin Hines because Shaffer believed Hines was more qualified than Lee (and the other candidates).

After Lee was informed that she was not selected for the new position, she complained to Nancy Dinkel, a GTE Employee Relations Manager. GTE commenced an internal investigation, but concluded that there had been no discrimination in the selection process.

As part of the investigatory process, Schaffer was requested to write a letter summarizing the reasons why he selected Hines over Lee. In his letter, Schaffer stated that he chose Hines over Lee because he felt that Hines's background, experience, knowledge, and education gave him an advantage over Lee based on four primary criteria: strategic planning, proven managerial ability, education, and real estate experience. Schaffer acknowledged that Lee had more real estate experience, but opined that Hines possessed stronger qualifications in the three other areas. Schaffer wrote that Hines held a Bachelor's degree, a GTE Associate Technical degree, and an Associate Management degree, while Lee only held a high school degree.

At trial, Lee called numerous witnesses, all of whom testified that she was

6

extremely competent in real estate transactions. None of these witnesses testified that they ever heard Schaffer act or speak in a discriminatory manner.

### III.

We review the district court's denial of defendant's motion for judgment as a matter of law de novo, applying the same standards used by the district court. See Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). "Those standards require the consideration of 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

To establish a prima facie case of Title VII sex discrimination in a promotional decision, a plaintiff must prove: (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. See Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999). Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. See id. If the employer meets this burden of production, the

7

plaintiff must then establish that the defendant's proffered reasons for the employee's rejection were pretextual. See id. at 867.

In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex. See Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000). We have explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997), cert. denied, sub nom., Combs v. Meadowcraft Co., 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998); see also Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999), cert. denied,--U.S.--, 120 S.Ct. 1962, 146 L.Ed.2d. 793 (2000) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999) (explaining that "it is not the function of the jury to scrutinize the

employer's judgment  as to who is best qualified to fill the position . . . .  The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination .")

Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual.  See Alexander, 207 F.3d at 1340; see also Walker v. Mortham, 158 F.3d 1177, 1190 (11th Cir. 1998), cert. denied, -- U.S.--, 120 S.Ct. 39, 145 L. Ed. 2d 36 (1999)("'The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination'") (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258-59, 101 S.Ct. 1089, 1096-97, 67 L.Ed.2d 207 (1981)); see also Taylor, 175 F.3d at 868 (stating that evidence of plaintiff's superior experience "would permit a jury to disbelieve" that the employer actually relied on the chosen candidate's experience when it promoted him).

Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted.  See Fulton County, 207 F.3d at 1340.  In

Deines, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280. The court explained that the phrase

> "jump off the page and slap [you] in the face" . . . should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

Id. at 280-81.

The Tenth Circuit in Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services, 165 F.3d 1321 (10th Cir.), cert. denied,-- U.S--, 120 S.Ct. 53, 145 L. Ed.2d 46 (1999), articulated a similar evidentiary burden for proving pretext. The court explained that "an employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute. . . . When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based

10

on unlawful criteria." Id. at 1329-30 (internal quotations and citations omitted). The court emphasized that its "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." Id. at 1330.

Shaffer testified that he hired Hines instead of the plaintiff Lee because, in his judgment, Hines was better qualified with respect to three of the four criteria listed in the Position Questionnaire. According to Schaffer, Hines had more managerial experience, more strategic planning experience, and had a Bachelor's degree in Building Construction from Virginia Polytechnic Institute, the equivalent of an Engineering degree.

Indeed, the evidence is undisputed that Hines had strong managerial skills, that he had direct supervisory responsibility for over 25 employees since 1982, that his experience included the supervision of three safety administrators and one clerk in his Loss Prevention Management position, and that he had occasion to manage six planners, a secretary, and a contract drafter when he held the position of Section Manager-Exchange Planning. In contrast, Lee never managed any GTE management level employees.

Moreover, the evidence is likewise undisputed that Hines had substantial experience in strategic planning dating back to 1978, when he became a Senior

11

Outside Plant Engineer. In Hines's last position prior to his selection for the Manager-Real Estate Services position, he was responsible for the planning efforts in coastal Florida for a telephone switching network valued at more than $500 million.

As for the third qualification identified by Shaffer in the job description--a preference for someone with a Bachelor's degree in business or engineering--it is undisputed that Hines had a bachelor's degree, whereas Lee finished two years of school at Hillsborough Community College obtaining an equivalent to an Associate of Arts degree in real estate.

Lee argues, nevertheless, that Shaffer's stated reason for denying her the promotion was pretextual because in her opinion she was more qualified than Hines. On this record, however, the evidence is insufficient to raise a genuine issue of fact regarding whether GTE's stated reason for promoting Hines instead of her is pretextual.  None of Lee's proffered evidence established that she  was more qualified than Hines, let alone so clearly more qualified for the position than Hines that a reasonable juror could infer discriminatory intent from the comparison.  See Fulton County, 207 F.3d at 1340; Deines, 164 F.3d at 280-81; Simms, 165 F.3d 1329-30.  Indeed, the evidence establishes that, of the four stated criteria in the position questionnaire, Lee was clearly more qualified that Hines in only one --

that of commercial real estate experience. Further, GTE never disputed that Lee had more real estate experience than Hines, but said that real estate experience was the least important of the four criteria because the real estate function of the position had been outsourced. As for the first two criteria in the position questionnaire-- managerial skills and strategic planning experience--the evidence established at most that the candidates were equally qualified. As for the preference for a Bachelor's degree, Hines was decidedly more qualified than Lee.

Quite simply, this evidence does not rise to the level of proof that is required when an employee attempts to prove pretext by showing she was substantially more qualified than the person promoted. Since Lee's evidence at trial fell far short of establishing that she was clearly more qualified for the position than Hines, Lee did not meet her burden of establishing that Shaffer's proffered reason for denying her the promotion was a pretext for gender discrimination.[2]

---

[2]Lee also argues that several other pieces of evidence support her position. First, Lee points to the fact that Shaffer, in his letter in response to the GTE investigation, changed the importance of the criteria he used in the selection process so that strategic planning became the most important of the four criteria. Lee claims that this shift in priorities was made after Shaffer hired Hines, to more closely tailor the criteria to Hines's qualifications. This evidence is not, however, significantly probative of pretext. See Nichols v. Lewis Grocer, 138 F.3d 563, 568 (5th Cir. 1998) (finding unpersuasive plaintiff's argument that the fact that the employer had changed the importance of the criteria used in the selection process established pretext, because "[t]he promotion decision is a dynamic one, and the relative importance placed on various selection criteria cannot be expected to remain fixed and unyielding.")

In addition, Lee claims that Shaffer's letter is evidence of pretext because in it "Schaffer played up Hines's qualifications, experience, and background while at the same time he down played Lee's qualifications, experience, and background." However, while Lee may have believed

13

Lee did not present sufficient evidence at trial to support the jury's finding

that Shaffer was mistaken in not giving greater weight to her educational experience, we have held that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason . . . ." Combs, 106 F.3d at 1543.

Next, Lee claims that the fact that she was treated differently from the other applicants during her interview is proof of pretext. Specifically, she testified that she was treated differently because she was not allowed to discuss her background and qualifications during the interview whereas the other applicants were allowed to do so. However, Lee conceded that Shaffer already knew her background and qualifications, a fact that undercuts any reasonable inference of pretext.

Lee also attempts to establish pretext by testifying that she was treated differently from Hines because Hines and Schaffer golfed together, and had once met privately for dinner in Tampa before the position was posted, to discuss Hines's interest in managing the real estate department. However, Shaffer did post the position, created a Position Questionnaire establishing objective criteria for the position, and interviewed a number of candidates, including Lee, before deciding on Hines. These actions rebut any reasonable inference of pretext that could otherwise be drawn from any relationship between Hines and Shaffer.

Lee also relies on the fact that Shaffer expressed concern during her interview about promoting an employee four management pay levels as evidence of pretext. Lee claims that since she had previously been promoted four pay levels, Shaffer's statement that he had never promoted anyone four pay levels indicated pretext. Lee mischaracterizes Shaffer's testimony. First, in the promotion where Lee was promoted four pay levels, she was not promoted four management pay levels, as would have been the case if she was promoted to the Manager-Real Estate Services position. Second, Shaffer testified only that it would be rare for someone to be promoted four management pay levels, and that he, personally, had never done it, a point in no way rebutted by Lee.

Finally, Lee attempts to show pretext by arguing that Shaffer had a poor history of promoting women, and, more specifically, that he did not offer a single Real Estate Services position (of the four total) to a female. Neither of these claims, however, is sufficient to raise a genuine issue regarding pretext. First, Lee's claim that Shaffer had a poor history of promoting women is too generalized to have any statistical significance. She claims that Shaffer only promoted a total of four women into management positions and only hired two women into staff positions. Notably, however, Lee does not tell us how many people Shaffer promoted in total and she provides no evidence as to relative qualifications. Lee also claims that although "the applicant list" for the seven management positions that Shaffer had to fill when he reorganized the company contained "a significant number of females," Shaffer filled all seven spots with men. Again, this data is statistically meaningless, because Lee has provided no specific context against which to measure these brief facts.

Lee also attempts to use as evidence of pretext the fact that Shaffer ultimately hired no women for the Real Estate Services position. However, this argument is wholly misleading, because Shaffer originally offered the Central Position to a woman, Janeen Travillyan, but she turned it down.

14

that Shaffer's proffered reason for denying her the promotion was a pretext for sex discrimination. Accordingly, we REVERSE the court's denial of GTE's motion for judgment as a matter of law, and remand for the district court to enter judgment in GTE's favor.

REVERSED AND REMANDED.