1. John E. Potter became Postmaster General on June 1, 2001; he is substituted as Defendant for former Postmaster General William

("Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce."). *Accord, National Helicopter Corp.*, 137 F.3d at 91. Accordingly, the Court concludes that the NBAA has failed to raise a genuine issue of material fact as to whether the Authority's ban violates the Commerce Clause. The Authority is therefore entitled to summary judgment.

### V. *Conclusion*

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment (Doc. 32, filed June 18, 2001) is **DENIED,** and Defendant's Motion for Summary Judgment (Doc. 38, filed June 18, 2001) is **GRANTED.**

**DONE** and **ORDERED** in Orlando, Florida this __ day of August, 2001.

**Linda HUMPHREY, Plaintiff,**

v.

**John E. POTTER,[1] as Postmaster General of the United States, Defendant.**

**No. 99–7621–CIV.**

United States District Court, S.D. Florida.

Sept. 14, 2001.

J. Henderson pursuant to Federal Rule of Civil Procedure 25(d)(1).

Charles Thomas Whitelock, Todd Shulby, Whitelock and Associates, P.A., Fort Lauderdale, FL, for plaintiff.

Jeffrey R. Levenson, Assistant U.S. Attorney, Fort Lauderdale, FL, Carla Ceballos-Snyder, U.S. Postal Service, Law Dept., Atlanta, GA, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

SELTZER, United States Magistrate Judge.

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (DE 28) and was referred to the undersigned Magistrate Judge pursuant to the consent of the parties. For the reasons set forth below, it is hereby ORDERED that Defendant's motion is GRANTED.

## I. FACTUAL BACKGROUND

On December 5, 1983, the United States Postal Service hired Plaintiff Linda Humphrey as a clerk at the Fort Lauderdale Processing and Distribution Center ("Fort Lauderdale Plant"). In 1988, Humphrey was promoted to "Supervisor, Mails," and in 1993, she was promoted to "Supervisor Distributions Operations." At various times between 1993 and 1996, Humphrey also served as an acting "Manager of Distribution Operations" ("MDO"), the last such service being from October 1995 to December 1997.

On June 24, 1997, the Postal Service posted a Promotion Vacancy Announcement for an MDO position at the Fort Lauderdale Plant. The vacancy announcement listed eight requirements for the MDO position.[2] Forty-two individuals, both from within and outside of the Fort Lauderdale district, applied for the position. Each candidate was required to submit a written application, providing his or her education and experience and discussing his or her qualifications with respect to the eight requirements.

Richard Blancas,[3] the Fort Lauderdale Plant Manager, was the selecting official;[4]

---

**2.** These eight requirements are as follows:
1. Knowledge of mail processing and distribution operations, policies, and procedure.
2. Ability to determine staffing and equipment needs, including determining priorities and assessing the need for overtime.
3. Ability to monitor operational performance and make appropriate adjustments to optimize mail flow.
4. Ability to communicate orally in order to coordinate work activities with other managers, consult with customers, and meet with union representatives.
5. Ability to manage the work of lower level employees to achieve organizational goals and objectives, including planning, organizing the work, facilitating the flow of work-related information, and providing technical guidance.
6. Ability to estimate mail processing and distribution expenditures in order to provide budget input.

7. Ability to monitor mail processing for compliance with established safety policy and procedures.
8. Ability to manage an on-the-job training program.
Vacancy Announcement, Ex. 5 (DE 34).

**3.** Blancas is of Hispanic descent.

**4.** In her Concise Statement of Facts, Humphrey contends that Joanne Feindt, and not Blancas, was the actual decision-maker. In support, Humphrey points to Blancas' deposition testimony that he had "recommended" Vincent Avello to Feindt and that Feindt had rejected Blancas' initial selection of the California candidate. Humphrey, however, does not explain the significance of Feindt being the final decision-maker. And she has proffered no evidence that Feindt acted discriminatorily. Indeed, Humphrey testified that the only individual who had discriminated against her was Blancas.

he interviewed each of the candidates.[5] During the interviews, Blancas asked each candidate a list of standard questions he had prepared in advance; these questions focused on leadership skills and situational experience. Additionally, Blancas employed hypothetical questions designed to address the applicants' analytical skills. Humphrey acknowledged in her deposition testimony that Blancas' questions were relevant to the position requirements and that Blancas had asked sufficient questions to make an informed decision. She also testified that during her interview, Blancas paid attention to her responses, kept eye contact, and took notes.[6]

After interviewing all applicants and reviewing their applications, Blancas narrowed the field to four finalists: Eugene Pollard (a black male from California); Paul Sek (a white male from Massachusetts); Vincent Avello (a white male from the Fort Lauderdale Plant); and Plaintiff Linda Humphrey (a black female from the Fort Lauderdale Plant). Blancas selected Pollard (a black male from California) for the position based on his analytical abilities and his experience in labor relations, worker's compensation, personnel management, and complement control. Blancas then discussed his selection with his supervisor, Joann Feindt, the Senior Plant Manager. For financial reasons, Feindt requested that Blancas consider only local candidates for the vacancy. Blancas then considered the two local candidates for the position—Avello and Humphrey. He also consulted with the five current MDOs, eliciting their opinions as to Avello's and Humphrey's respective abilities.[7]

On December 30, 1997, Blancas announced that he had selected Avello for the position. Blancas acknowledged that it was a difficult decision, but he stated that he believed Avello was better qualified than Humphrey. He had concluded that Avello possessed superior analytical skills and had more experience with the automated Tray Management system.[8] And Blancas testified that Avello was more

---

5. Humphrey contends that it was Defendant's custom and practice to use a review or selection board to screen applicants. Blancas had employed a selection board in May 1986 when filling two vacant MDO positions. Defendant, however, explains that Blancas chose to use a selection board on that occasion because he was new to the Fort Lauderdale Plant and was not yet familiar with the inner workings of the district or with the local candidates. The selection board, which was selected by Blancas, was comprised of a black male, a white female, and a white male. The board submitted five candidates for the 1986 positions; Blancas selected a black male and a white female. Defendant additionally notes that Blancas had not used a selection board when he filled four MDO vacancies while a plant manager in California. Blancas had promoted a black female, a white male, and two Taiwanese Americans to the California MDO positions.

6. In a subsequent affidavit, Humphrey claims for the first time that Blancas conducted the interviews in a discriminatory manner. According to Humphrey, Blancas did not ask either her or another female candidate questions relating to the eight requirements for the MDO position, while his questions to Avello did correlate to those requirements. However, before making his selection, Blancas reviewed the applications, in which each candidate was required to set forth his or her qualifications with respect to the eight posted requirements. No evidence exists that Blancas was required to again address those areas in the interviews.

7. Blancas testified that three of the MDOs (Patricia Fogarty, Rich Kelleher, and Paul Apolinaro) recommended Avello and that two (Sue Aronson and Jackie Watson) recommended Humphrey. Humphrey, however, denies that any of these MDOs recommended Avello for the position. See note 14 infra.

8. According to Defendant, the Postal Service had been attempting to improve its automated processing of mail; the Tray Management system was an integral part of that process.

impressive than Humphrey in the interview. According to Blancas, Avello emphasized his knowledge of and experience with the Tray Management system while Humphrey stressed her educational pursuits. Blancas also believed that Avello responded better to the hypothetical questions. And Blancas took into account Avello's experience and knowledge of Tour 1 (the 10 p.m. to 6:00 a.m. shift), his understanding of workroom operations, and his experience and ability in managing a tour. Blancas testified that although Humphrey also had the ability to manage a tour, he believed that her analytical skills were not as impressive.

After selecting Avello for the position, Blancas offered Humphrey the opportunity to remain as an acting MDO. Humphrey, however, chose to develop her skills in plant support and Tray Management system processing.[9]

On February 27, 1998, Humphrey filed an EEO complaint, alleging that Blancas had discriminated against her by not promoting her to the MDO position. And on December 10, 1999, she filed the instant action, alleging that Defendant discriminated against her based on both her race (black) and gender (female), in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*[10]

## II. *STANDARD OF REVIEW*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. An issue is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it must be decided to resolve the substantive claim or defense to which the motion is directed. *Id.; Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1993).

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the movant has satisfied its initial burden, the non-moving party must then go beyond the pleadings to rebut any facts properly presented; it may do so through affidavits or other evidence showing the existence of genuine issues of material fact for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Adickes*, 398 U.S. at 160, 90 S.Ct. at 1610.

Summary judgment is appropriate when, after adequate time for discovery, the non-moving party cannot establish an essential element on which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* See also *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir.1990).

---

**9.** Two years later, the Postal Service promoted Humphrey to an MDO in Orlando, Florida.

**10.** In addition to a discriminatory denial of a promotion, the Complaint alleges that Defendant wrongfully denied Humphrey "raises and other monies," that it gave her "less advantageous work assignments," and that her supervisors "treated [her] unfairly." Complaint (DE 1). Humphrey, however, has testified that the sole issue for the Court's consideration is whether Blancas discriminated against her by not awarding her the MDO promotion.

In considering the motion, the Court must construe the evidence and the inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Furthermore, facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981)(quoting 10C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2727 at 524–30 (1973)).

### III. *MOTION FOR SUMMARY JUDGMENT*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Humphrey alleges that Defendant did not promote her to Manager of Distribution Operations ("MDO") because of her race (black) and gender (female) and that Defendant instead promoted a less qualified white male to the position.

A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000). Where, as here, a plaintiff has produced no direct evidence of discrimination, courts analyze a discrimination claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1981), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

*See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir.1997); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997).

Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir.2001). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562 (citations omitted). To establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: "(1) that [s]he is a member of a protected class; (2) that [s]he was qualified for and applied for the promotion; (3) that [s]he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Id.* (quoting *Combs*, 106 F.3d at 1539 n. 11).

Once a plaintiff has established these elements, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Denney*, 247 F.3d at 1183; *Holifield*, 115 F.3d at 1564. The defendant's burden, however, "is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000)(en banc)(internal quotation marks omitted).

If a defendant articulates one or more such reasons for its challenged action, the plaintiff must then "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable

factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." [11] *Id.* "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claims." *Id.* at 1024–25. *See also Denney*, 247 F.3d at 1183 (plaintiff "has the ultimate burden of proving the reason to be a pretext for unlawful discrimination").

Defendant does not dispute that Humphrey is a member of two protected classes (race and gender), that she was qualified to be an MDO, or that she was not promoted to the position. Rather, Defendant argues that because Blancas initially chose a black male, Humphrey cannot establish that another person who is outside the protected racial group received the position. According to Defendant, it was only after Blancas' first choice, a black male from California, was not accepted for financial reasons that Blancas chose Avello, a white male, to be the MDO.[12] Humphrey counters that Defendant is asking the Court to create a fifth element of a prima facie case—"plaintiff must also establish that all persons recommended but rejected for promotion by defendant were also not members of the protected class." Memorandum at 3 (DE 33). She argues that she has demonstrated what the law requires—that she, a black female, was rejected for the MDO position in favor of a white male.

■ Although Defendant raises an interesting argument (albeit without citation to any authority), the Court need not decide the issue because Humphrey has failed to adduce sufficient evidence from which a reasonable jury could find that Defendant's proffered reasons were pretext for discrimination.

Assuming, *arguendo*, that Humphrey has established a prima facie case of both race and gender discrimination, Defendant has met its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for promoting Avello and not Humphrey. *See Holifield*, 115 F.3d at 1564 (defendant's intermediate burden is "exceedingly light"). Blancas testified that he selected Avello for promotion over Humphrey because he had concluded, based on questions posed at the interview, that Avello possessed analytical skills superior to those of Humphrey. Blancas also concluded that Avello possessed other skills that supported his decision: "Avello's extensive experience and knowledge of the Tour 1 . . ., which Blancas deemed the most difficult shift; Avello's understanding of the workroom operations; Avello's experience and ability in managing a tour; and significantly, Avello's extensive and superior working knowledge of the automated Tray Management System." Motion at 7 (DE 28).

11. The Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false may permit the trier of fact to conclude that the employer unlawfully discriminated" and be sufficient to withstand a motion for judgment as a matter of law. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). The Court, however, cautioned that such a showing will not always be adequate to sustain a finding of liability, such as where the record conclusively reveals some other non-discriminatory reason for the employer's decision, or where the plaintiff creates only a weak fact issue as to the falsity of the employer's reason and there is abundant, uncontroverted evidence that discrimination did not occur. *Id.*

12. Defendant's argument would be inapplicable to Humphrey's gender discrimination claim as Blancas' initial choice and his ultimate selection were both males.

Defendant having articulated legitimate, nondiscriminatory reasons for selecting Avello over Humphrey for the promotion, it was incumbent on Humphrey to come forward with sufficient evidence demonstrating that each of Defendant's proffered reasons was pretextual. Humphrey attempted to demonstrate pretext by comparing herself to Avello on seven criteria that she deemed critical: (1) the eight posted requirements for the job; (2) seniority; (3) experience as an MDO; (4) education; (5) sick leave/attendance; (6) Tray Management system experience; and (7) analytical skills. With respect to analytical skills and the eight posted job requirements, Humphrey acknowledges that neither she nor Avello had an advantage over the other. But Humphrey contends that she was clearly more qualified than Avello according to the following criteria: [13]

● *Seniority*—Humphrey had worked for the Postal Service for 14½ years; Avello had worked for the Postal Service for only 11 years;

● *Experience*—Humphrey had been an acting MDO for the previous two years; Avello had served as an acting MDO for only a few weeks during Blancas' tenure and had never been assigned to Tour 3.

● *Education*—Humphrey had 73 college credits toward a degree in management; Avello had only a high school degree and no college credits;

● *Sick Leave/Attendance*—Humphrey had received recognition for "zero sick leave usage" in 9 of 14 years; Feindt had expressed to Blancas that Avello had had some problems with attendance many years prior to the selection.[14]

Viewing the evidence in the light most favorable to Humphrey, it fails to demonstrate that Defendant's proffered reasons for choosing Avello over Humphrey were a pretext for race and/or gender discrimina-

13. In her opposition memorandum, Humphrey also contends that she has the "advantage" over Avello in Tray Management system experience. She states that she had served for two years on the Tray Management Systems Committee with Avello and that during that time she was an acting MDO while Avello held a lower level position (Supervisor Distribution Operations). Humphrey's own deposition testimony, however, belies this contention. When asked whether there was any area in which Avello was more qualified, Humphrey replied that Avello had more experience in the Tray Management system. Humphrey Dep. at 215–16.

14. To bolster her contention that she was the more qualified candidate, Humphrey points to Avello's testimony that he was surprised to have received the MDO position. Avello testified he was surprised to receive the position because he had more knowledge of and experience in working on Tour 1 than Tour 3, and he acknowledged that Humphrey had more experience on Tour 3. Humphrey also relies on her own deposition testimony that three of the MDO's from whom Blancas had sought input related to her their surprise at Avello's selection. According to Humphrey, MDOs Kelleher, Fogarty, and Apolinaro all informed her that they had recommended her for the position. Kelleher, Forgarty, and Apolinaro, however, have submitted affidavits in which they all deny that they made such statements to Humphrey. Fogarty has averred that she recommended Avello because overall he was the best qualified candidate. Fogarty further averred that she informed Blancas that Avello was more of a "hands on the job" type person than Humphrey, who spent a lot of her time at her desk, and that Avello had better "people's skills" than Humphrey. Kelleher averred that he recommended Avello because he was more knowledgeable about the MDO position. And Apolinaro averred that he recommended Avello because he was the better candidate. But even assuming that Humphrey's testimony is not (inadmissible) hearsay and that it could create a factual issue as to whether these three MDOs had recommended Avello or Humphrey for the position, the issue is immaterial. No evidence exists that Blancas, the decision-maker, was required to either seek or follow the MDOs' recommendations.

tion. First, no evidence exists that the criteria by which Humphrey has chosen to assess herself superior to Avello were "qualifications" for the position or that Blancas was required to or did consider Humphrey's criteria. Consequently, any advantage that Humphrey may have demonstrated with respect to her seniority, education, experience as an acting MDO, or sick leave usage is immaterial. Furthermore, with respect to the categories that Blancas did consider—analytical skills, the eight posted job requirements, and the Tray Management system experience—Humphrey acknowledged that she was no more qualified than Avello. Moreover, Humphrey has failed to explain how her perceived advantages make her the more qualified candidate; she has failed to demonstrate any nexus between her selected criteria and the requirements for the job. See Denney, 247 F.3d at 1187 (plaintiff's relatively higher scores on the "objective" portion of the qualification exercise "would not prove that he was more qualified, let alone substantially more qualified" for the position). For example, as Defendant notes, even though Avello had less formal education than Humphrey, no evidence exists that college course work would in any way assist Avello in processing the mall faster and better.[15] And seniority does not always "translate into a net performance improvement. . . ." *Ferron v. West*, 10 F.Supp.2d 1363, 1367 (S.D.Ga.1998)(ruling that a plaintiff's argument that he was more qualified because he had more years of federal employment than other applicants for a position "adds nothing").[16]

Moreover, even were Humphrey deemed more qualified than Avello for the position, this Court could not conclude that she has demonstrated pretext. As this Circuit has explained, "[i]n a failure to promote case, a plaintiff cannot prove pretext by merely showing that she was better qualified than the individual who received the position that she wanted. . . . 'Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'" *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253–54 (11th Cir.2000)(quoting *Deines v. Texas Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir.1999)). To prevail on her argument, therefore, Humphrey would need to demonstrate that the disparities in qualifications were such that "no reasonable person, in the exercise of impartial judgment," could have chosen Avello over her for the MDO position. *See id.* This, Humphrey has failed to do. A comparison of Avello's and Humphrey's respective qualifications reveals that any disparity that may have existed was not of such magnitude as to "jump off the page" and give rise to an inference of pretext. *Lee*, 226 F.3d at 1253–54.

Humphrey next argues pretext is shown because Blancas relied solely on a subjective criterion—analytical skills—in

15. According to Defendant, Avello had participated in courses in mail processing given by the Postal Service.

16. Defendant notes that Humphrey failed to include in her comparisons the candidates' performance in the interview. Blancas indicated that he was more impressed with Avello's interview because Avello focused on his knowledge of and experience with the Tray Management system and responded well to the hypothetical questions asked at the interview. Defendant additionally points out that Humphrey failed to compare performance evaluations. Avello had received the highest rating possible—"far exceeds expectations"—in the period immediately preceding his selection while Humphrey had never succeeded in achieving such a high rating.

selecting Avello over Humphrey. But, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes." *Denney,* 247 F.3d at 1185. An employer's subjective reason for its employment decision can constitute a "legally sufficient, legitimate, nondiscriminatory reason" if the employer "articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman,* 229 F.3d at 1034. *See also Joe's Stone Crab,* 220 F.3d at 1280 n. 17 ("[E]mployment decisions may legitimately be based on subjective criteria as long as the criteria are capable of objective evaluation and are stated with a sufficient degree of particularity."). This Circuit has explained:

> [S]ubjective evaluations of a job candidate are often critical to the decision-making process, and if anything, are becoming more so in our increasingly service-oriented economy.... Personal qualities ... factor heavily into employment decisions concerning supervisory or professional positions. Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position.... It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions because those criteria are only capable of subjective evaluation. To phrase it differently, subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as

objective reasons.... A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.

*Denney,* 247 F.3d at 1185–86 (quoting *Chapman,* 229 F.3d at 1033–34).

Here, Defendant has provided a "clear and reasonably specific factual basis" as to how Blancas arrived at his subjective conclusion. *Id.* Blancas first explained what he meant by "analytical skills"—the "ability to gain data, make determinations, fix problems, meet desired results, work with new systems, teach these new systems, [and] coordinate activities on the floor with results of the new Tray [M]anagement system." Blancas Dep. at 142. He also considered as "analytical skills," "problem solving, performance results, [and] ability to react to changing conditions in the workplace." Blancas Dep. at 66. Blancas then explained the factual basis for his conclusion that Avello possessed superior analytical skills. He cited the difference between Avello's and Humphrey's responses to the following question: "If you had a bad performance out of an operation, what data would you look at, what type of reports would you look at and how would you arrive at a conclusion for recommendation?" Blancas Dep. at 135. Although Blancas could not recall the hypothetical situations chosen by either candidate, he stated: "I do recall, the significance that stuck in my mind was the fact that Mr. Avello gave me more data and data sources in his analysis, as well as the data was driven toward the recommendation. In [Humphrey's] case, she could not name the reports or data sources to gain that." Blancas Dep. at 135–36. Blancas further testified that during the interview Humphrey stressed her education, while Avello stressed his knowledge of Tray Manage-

ment automation and his accomplishments at the Postal Service.

## IV. *CONCLUSION*

In summary, Humphrey has failed to demonstrate that the disparities in qualifications she cites "are so apparent as virtually to jump off the page and slap you in the face" and that, therefore, Blancas' asserted reasons for promoting Avello were a pretext for intentional race and/or gender discrimination. *See Lee*, 226 F.3d at 1253–54. Accordingly, Defendant is entitled to summary judgment on Plaintiff Linda Humphrey's claims under the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*