[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10448

Non-Argument Calendar

_____

NICOLE GUERRIERO,

Plaintiff-Appellant,

*versus*

CITY OF DELRAY BEACH,
JAVARO A. SIMS,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 9:21-cv-82075-DMM

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Nicole Guerriero appeals the district court's order granting summary judgment to her employer, the City of Delray Beach, and its former chief of police, Javaro Sims, on her race and sex discrimination claims. After careful consideration, we affirm.

**I.**

Guerriero, a white woman, has worked for the City's police department for more than 20 years.[1] She was initially hired as a road patrol officer and eventually rose to the rank of lieutenant.

Guerriero's claims in this case arise out of incidents that occurred when the City selected a new police chief. The city manager decided that two assistant chiefs—Sims, a Black man, and Mary Olsen, a white woman of Cuban heritage—would audition for the chief position by each serving in the role for three months. Olsen, who auditioned first, appointed Guerriero as acting chief of internal affairs. When Sims had his audition, he kept Guerriero in that role.

_____

[1] Because we write only for the parties, who are already familiar with the facts and proceedings in the case, we include only what is necessary to explain our decision.

At the conclusion of the auditions, the city manager promoted Sims to chief. Sims then made permanent appointments to his executive staff. He decided that Guerriero would not continue to serve as chief of internal affairs. Instead, he tapped Lieutenant Scott Privitera, a white man, to fill the role. Sims selected Privitera over Guerriero because he "had more overall law enforcement, management, and leadership experience." Doc. 76-3 at 5.[2] In addition, Privitera had a "lack of significant disciplinary history" and "fewer sustained findings and disciplinary actions" than Guerriero. *Id.* at 6–7. Sims made the decision to select Privitera after consulting with his two assistant chiefs, each of whom recommended Privitera over Guerriero.

Around this time, Sims filled an open captain position. He did not promote Guerriero; instead, he selected David Weatherspoon, a Black man. Sims selected Weatherspoon because he was a "strong leader[]," was "devoted to community engagement," and had "more overall law enforcement experience than" Guerriero. *Id.* at 7. In making this decision, Sims again consulted with his two assistant chiefs, each of whom recommended Weatherspoon over Guerriero.

Afterward, Guerriero sued Sims and the City, bringing sex and race discrimination claims under 42 U.S.C. § 1983. Both defendants moved for summary judgment. The district court granted the motion. Although Guerriero had "served her community for

---

[2] "Doc." numbers refer to the district court's docket entries.

many years and was most likely qualified for the positions at issue," the district court concluded, no reasonable jury could find that Sims "acted with a discriminatory purpose" when he removed her as chief of internal affairs and decided not to promote her to captain. Doc. 107 at 12.

In deciding whether there was sufficient evidence of discriminatory intent, the district court considered the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as well as whether Guerriero had introduced a convincing mosaic of evidence that would support an inference of discrimination. Regarding the *McDonnell-Douglas* framework, the court concluded that Guerriero failed to establish a prima facie case of discrimination because she had not shown that she was treated less favorably than a similarly-situated individual outside her protected class. For the internal affairs position, the court determined that Guerriero was not similarly situated to Privitera because he had worked for the department longer, managed more employees, and had fewer sustained findings in internal investigations. And for the captain position, the court concluded that she was not similarly situated to Weatherspoon because he had worked for the department for longer, served as lieutenant for longer, and had fewer sustained findings in internal investigations.

But even if Guerriero had established a prima facie case of discrimination, the district court concluded, Sims and the City still would be entitled to summary judgment under the *McDonnell-Douglas* framework. The court explained that Sims had advanced

legitimate, non-discriminatory reasons for selecting Privitera as chief of internal affairs and Weatherspoon as captain: their superior qualifications. Because Guerriero failed to show that "no reasonable person, in the exercise of impartial judgment, could have chosen" Privitera or Weatherspoon over her, the district court concluded that she had not shown pretext. Doc. 107 at 10 (internal quotation marks omitted). Thus, she "fail[ed] to raise a triable issue of fact under" *McDonnell Douglas*. *Id.*

The court then turned to whether Guerriero had established a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Id.* (internal quotation marks omitted). To support her convincing mosaic theory, Guerriero pointed to evidence about how Sims treated other white women. He disciplined Nicole Lucas, a white female officer, and decided not to promote Stephanie Baker, another white female officer. In addition, Guerriero pointed out that Olsen left the department after she was not selected for the chief position.

The district court concluded that Guerriero had not come forward with a convincing mosaic of circumstantial evidence. It noted that in his tenure as chief Sims "promoted a diverse set of officers: three white (one being Hispanic) females, one black female, seventeen white males, and two black males." *Id.* at 11. Although Guerriero argued that Sims had punished Lucas because of her race or gender, the record showed that she was suspended for publishing an inflammatory social media post that read, "Fuck everyone who says black lives matter. I can't take your fucking bullshit

anymore." *Id.* (internal quotation marks omitted). The court explained that Sims punished Lucas not because of her race but because he was "concerned that this statement could be attributed to the department at a time when the relationship with the public was fragile" and "put into question [her] ability to make good decisions on the job." *Id.* The court likewise determined that Sims's decision not to promote Baker did not create a convincing mosaic. And it noted Olsen's testimony that "she had never seen . . . Sims show any animosity towards white female police officers." *Id.* The court concluded that Guerriero's evidence was "a long way from" establishing a convincing mosaic. *Id.*

This is Guerriero's appeal.

## II.

We review *de novo* a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

The Equal Protection Clause of the Fourteenth Amendment "requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006). It "prohibits race and sex discrimination in public employment." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir.

2018). An employment discrimination claim against a state actor under the Equal Protection Clause is "subject to the same standard[] of proof and use[s] the same analytical framework as discrimination claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981." *Id.* at 1312 n.6. To prevail on a § 1983 employment discrimination claim, an employee must establish, among other things, "the employer's discriminatory intent." *Id.* at 1312.

To establish intent, a plaintiff may use either direct or circumstantial evidence. *Id.* "Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (alterations adopted) (internal quotation marks omitted). "In contrast, circumstantial evidence only suggests, but does not prove, a discriminatory motive." *Id.* at 921–22 (internal quotation marks omitted). When a plaintiff relies on circumstantial evidence, she may establish that the defendant acted with discriminatory intent through the *McDonnell Douglas* burden-shifting framework or by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted) (footnote omitted).

Here, Guerriero relied on circumstantial evidence only. She argues that a reasonable jury could conclude that Sims intentionally discriminated against her when he removed her from the

internal affairs chief position and did not promote her to captain. She says that for each decision she introduced sufficient evidence to survive summary judgment under the *McDonnell-Douglas* framework or under a convincing mosaic theory. We disagree.

We begin with Guerriero's argument based on the *McDonnell-Douglas* framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). To establish a prima facie case, she must show that (1) "she belong[ed] to a protected class," (2) "she was subjected to an adverse employment action," (3) "she was qualified to perform the job in question," and (4) the "employer treated similarly situated employees outside her class more favorably." *Id.* at 1220–21 (internal quotation marks omitted). To meet the "similarly situated" requirement, the plaintiff must show that the comparator was similarly situated "in all material respects." *Id.* at 1226 (internal quotation marks omitted). "Ordinarily," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff" and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28. In the failure to promote context, to satisfy the fourth requirement of the prima facie case, the plaintiff must show that "the position was filled with an individual outside the protected class." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).[3]

---

[3] The parties sharply disagree about whether, to establish a prima facie case in the failure-to-promote context, the employee also must show that the individual who received the promotion was equally or less qualified. We need not

23-10448                 Opinion of the Court                 9

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. If the defendant carries this burden, the "plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

To establish pretext, the plaintiff "must present significant probative evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the but-for cause of the adverse employment action." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (internal quotation marks and citation omitted). The plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (internal quotation marks omitted). When considering pretext, we "do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal quotation marks omitted). A court may not "find pretext by simply quarreling with the wisdom" of the employer's reasons. *Id.* (internal quotation marks omitted). To establish pretext in the context of a promotion or demotion decision, the plaintiff "must show that the disparities

_____

resolve this question. Even assuming Guerriero is correct that she was not required to show that Privitera and Weatherspoon were equally or less qualified at the prima facie case stage, Sims and the City nevertheless were entitled to summary judgment under the *McDonnell-Douglas* framework because, as we explain later, she failed to establish pretext.

between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Brooks v. Cnty. Comm'r of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).

Here, even assuming that Guerriero established a prima facie case of discrimination regarding Sims's decisions to remove her as chief of internal affairs and not to promote her to captain, her claims fail because she has not shown that his legitimate, non-discriminatory reasons for selecting Privitera as internal affairs chief and Weatherspoon as captain were pretextual.

Sims advanced a legitimate, non-discriminatory reason for removing Guerriero as internal affairs chief and replacing her with Privitera: he viewed Privitera as more qualified. Sims explained that Privitera had "more overall law enforcement, management, and leadership experience" than Guerriero. Doc. 76-3 at 5. Guerriero argues that this stated reason was merely a pretext for discrimination. After considering the record before us, which shows that Privitera had more experience as an officer, more overall investigative experience, and previously managed more than 40 officers, we cannot say that the disparities between Guerriero's qualifications and Privitera's qualifications were so stark that no reasonable person could have chosen him over her. *See Brooks*, 446 F.3d at 1163.

We reach a similar conclusion on Sims's decision to promote Weatherspoon to captain. Sims articulated a legitimate, non-

discriminatory reason for his selection of Weatherspoon over Guerriero: he viewed Weatherspoon as the better qualified candidate because he was a strong leader who had more "overall law enforcement experience." Doc. 76-3 at 7.

Guerriero argues that this stated reason was merely a pretext because Weatherspoon was actually the less-qualified candidate who had past performance problems. But given that Weatherspoon had served with the department for longer that Guerriero and had significant experience in community engagement, the disparities in qualification were not so severe that "no reasonable person could have chosen [Weatherspoon] over her." *Brooks*, 446 F.3d. at 1163; *see also Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000) (holding that evidence showing that plaintiff was "clearly more qualified" in one area relevant for the job did not establish that employer's decision to promote a different employee was pretextual).

Because Guerriero failed to show that Sims's reasons for selecting Privitera as internal affairs chief or Weatherspoon as captain were pretextual, we conclude that Sims and the City were entitled to summary judgment under the *McDonnell-Douglas* framework.

We now turn to whether Guerriero established a convincing mosaic that would support an inference of discriminatory intent. Even when a plaintiff cannot satisfy the *McDonnell-Douglas* framework, she still may survive summary judgment by coming forward with "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the

decisionmaker." *Smith*, 644 F.3d at 1328 (internal quotation marks omitted) (footnote omitted). Evidence that is likely be probative in establishing a convincing mosaic includes evidence of "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 n.2 (11th Cir. 2023) (internal quotation marks omitted).

Guerriero argues that she presented a convincing mosaic of circumstantial evidence that would allow a jury to infer that Sims decided to remove her as internal affairs chief and not to promote her to captain because of her race or gender. She says that Sims repeatedly discriminated against white women, pointing to his treatment of Lucas, Baker, and Olsen.

We are not persuaded. Although Guerriero argues that Sims's decision to discipline Lucas was based on her race or gender, the record reflects that Sims disciplined Lucas after she made an inflammatory post on social media about the Black Lives Matter movement, which had the potential to upset community relations and demonstrated poor judgment. In addition, although Sims decided not to promote Baker to sergeant,[4] he awarded promotions

---

[4] Like Guerriero, Baker sued Sims and the City for discrimination. We recently affirmed the district court's grant of summary judgment to Sims and the City. *See Baker v. City of Delray Beach*, No. 23-10760, 2024 WL 1107093 (11th Cir. Mar. 14, 2024) (unpublished). We explained that Sims's legitimate nondiscriminatory reason for not promoting Baker was that at the time of the decision she was the subject of an internal affairs investigation arising out of allegations that

to other women, including white women. As to Olsen, the record reflects only that she left the department when Sims was selected as chief over her. We agree with the district court that Guerriero's evidence about Lucas, Baker, and Olsen falls far short of establishing a convincing mosaic.

After carefully reviewing the record, we conclude that no reasonable jury could find that Sims intentionally discriminated against Guerriero based on her race or gender when he replaced her as chief of internal affairs and passed her over for the promotion to captain. We thus agree with the district court that Sims and the City were entitled to summary judgment.

**AFFIRMED.**

---

she had misused her position, submitted false overtime claims, and made false statements. *Id.* at *2. Although Baker ultimately was exonerated, we concluded that she had failed to demonstrate that Sims's decision not to promote an officer who was the subject of an ongoing investigation was pretextual. *Id.*