[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 16-17237
Non-Argument Calendar
————————————————

D.C. Docket No. 1:15-cv-00876-TCB


QUNESHA BOWEN,

Plaintiff-Appellant,

versus

MANHEIM REMARKETING, INC.,

Defendant-Appellee.


————————————————

Appeal from the United States District Court
for the Northern District of Georgia
————————————————

(February 21, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

WILSON, Circuit Judge:

Qunesha Bowen appeals the dismissal of her employment discrimination claims against Manheim Remarketing.  Bowen sued Manheim under the Equal Pay Act and Title VII, alleging that Manheim discriminated against her by paying her less than her male predecessor.  The district court dismissed Bowen's claims at summary judgment.  After careful consideration of the record and the parties' briefs, we reverse and remand.  Bowen is entitled to proceed to trial on her Equal Pay Act and Title VII sex discrimination claims.

## I. BACKGROUND

Manheim hired Bowen as an automobile detailer, and three years later (in late 2005), assistant general manager John Deck promoted her to arbitration manager.  Bowen replaced a male arbitration manager.  Manheim paid that male predecessor $46,350 during his first year as arbitration manager, but Deck and general manager Peter Palmer set Bowen's starting salary at $32,000.  Bowen's salary did not reach $46,350 until her sixth year as arbitration manager.

After learning about the pay disparity with her male predecessor, Bowen sued Manheim under the Equal Pay Act and Title VII.  At summary judgment, she offered in support of her claims, among other things, (1) documents and testimony about her performance and salary history and (2) affidavit testimony from Manheim's human resources manager, Mikiya Peoples.

2

Bowen offered documents and testimony showing that, although she was an effective arbitration manager, her salary for a few years was below the minimum salary for arbitration managers and it was consistently well below the midpoint salary for arbitration managers. Manheim, for example, paid Bowen $37,001.60 in 2007; $41,000 in 2008; $46,075.63 in 2010; and $46,075.63 in 2011. But under Manheim's compensation guidelines the midpoint salary for an arbitration manager was $49,400 in 2007; $52,900 in 2008; $55,500 in 2010; and $56,500 in 2011.

In her affidavit, Peoples described interactions with Manheim general managers such as Deck and Palmer and her investigations into sex-based disparities at Manheim:

- When Bowen was promoted to arbitration manager, Peoples approached Deck about the pay disparity between Bowen and Bowen's male predecessor. Deck explained that the predecessor was more experienced than Bowen. However, he also acknowledged that the predecessor had trained Bowen for the position and that Bowen was fully capable of performing the position's duties.

- Comments from a 2007 employee survey that Peoples conducted indicated that (1) female employees were treated differently than male employees, (2) female employees were denied particular positions, and (3) a "good ole' boy" system existed at Manheim.

- The 2007 survey results prompted Peoples to conduct an investigation into sex-based disparities at Manheim. She gathered all of Manheim's job postings and examined who applied and who interviewed for posted positions. Based on that review, she concluded that Manheim was excluding women from certain positions. Discussions with Palmer bolstered this conclusion. While discussing a female employee's application for an assistant general manager position, Palmer told Peoples that he would not hire a woman as an assistant general manager. According to Palmer, Manheim would be "the laughing stock" of the

3

community if it made such a hire.  Palmer also once told Peoples that he would never allow a female to work as a mechanic.

- Following the 2007 survey, Manheim's corporate office directed Palmer to confer with it when setting employee compensation, but Palmer failed to follow that directive.

- Comments from a 2009 employee survey that Peoples conducted indicated that female employees were paid less than male employees.

- The 2009 survey results prompted Peoples to investigate pay disparities at Manheim.  She instructed Manheim's payroll administrator to run reports comparing women's and men's pay and prior pay increases.  This investigation revealed that women were paid similarly but that their pay was "thousands of dollars less than men's pay for the same jobs."

- Peoples reported her findings about sex-based pay disparities to Palmer, but he refused to address the disparities.

- Peoples spoke to a corporate representative about her pay-disparity findings.  The representative told Peoples to draft a formal report with her allegations and findings.  Peoples then reviewed payroll data for all female and male employees, including Bowen.  She specifically discussed Bowen with the corporate representative, noting that Bowen was "severely underpaid" compared to her male predecessor.

- The corporate representative met with Palmer to discuss Peoples's report.  But Palmer told the representative that he "did not see a problem," and he was unwilling to take corrective action.  Consequently, the corporate office required Manheim to provide female employees "equity increases" in their pay.  Bowen received such equity increases.

- Around 2010 or 2011, Ben Shurling replaced Palmer as Manheim's general manager, but sex-based discrimination continued to exist at Manheim.  Indeed, Shurling harassed female employees by groping them and smacking their buttocks.  And on one occasion, Shurling told Peoples to serve as a receptionist on sale day so that customers would return and say, "Where's that pretty little black girl that was working here last week?"  On another occasion, Shurling attempted to replace a female employee with a male, but the corporate office

4

told him that doing so would be illegal.  Shurling responded, "Why can't we just pay a fine?"

The district court granted summary judgment to Manheim, finding that Manheim offered nondiscriminatory reasons for the pay disparity between Bowen and her male predecessor and that Bowen failed to rebut those reasons.  Bowen relies primarily on Peoples's affidavit to show sex bias, the district court determined, and most of the affidavit is inadmissible hearsay.  Further, to the extent that the affidavit includes admissible evidence, the evidence is of limited value because it does not directly show that sex bias factored into Manheim's salary decisions.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, drawing "all reasonable inferences in the light most favorable to" Bowen.  *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986) (internal quotation marks omitted).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248, 106 S. Ct. at 2510.  Summary judgment is appropriate only if a

case is "so one-sided that one party must prevail as a matter of law." *See id.* at

251–52, 106 S. Ct. at 2512.

## III. DISCUSSION

Taking the evidence in the light most favorable to Bowen, she is entitled to

proceed to trial on her Equal Pay Act and Title VII claims. This case is not "so

one-sided that [Manheim] must prevail as a matter of law." *See id.*, 106 S. Ct. at

2512. First, a jury could conclude that Bowen is entitled to relief under the Equal

Pay Act because the evidence supports a finding that she has made a prima facie

case and that Manheim has failed to establish an affirmative defense in response.

Second, a jury could conclude that Bowen is entitled to relief under Title VII

because the evidence supports a finding that her sex "was a motivating factor for"

the pay disparity between her and her male predecessor. *See* 42 U.S.C. § 2000e-

2(m).

### A. Equal Pay Act

A plaintiff establishes a prima facie case under the Equal Pay Act if she

shows that her employer paid "different wages to employees of opposite sexes for

equal work on jobs requiring equal skill, effort, and responsibility, and which

[we]re performed under similar working conditions." *See Irby v. Bittick*, 44 F.3d

949, 954 (11th Cir. 1995) (internal quotation marks omitted). Once a plaintiff

makes such a showing, the employer can avoid liability only if it proves by a

preponderance of the evidence that the wage differential was justified by "a seniority system," "a merit system," "a system which measures earnings by quantity or quality of production," or some "factor other than sex." *See id.* (internal quotation marks omitted).  Proving this affirmative defense can be difficult; the employer's "burden is a heavy one." *Id.* (internal quotation marks omitted).  The employer "must show that the factor of sex provided *no basis* for the wage differential." *Id.* (emphasis in original) (internal quotation marks omitted).  "Further, the employer must show that none of the decision-makers, whether in middle or upper management, were influenced by [sex] bias." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003).  If the employer satisfies its burden, the plaintiff must offer evidence showing that the employer's nondiscriminatory reason for the wage differential is pretext. *See Irby*, 44 F.3d at 954.

Bowen is entitled to proceed to trial on her Equal Pay Act claim.  She has established a prima facie case by pointing to the pay disparity between her and her male predecessor, and although Manheim has identified nondiscriminatory reasons for the disparity, a jury could find that Manheim has failed to satisfy its heavy burden of showing that sex provided no basis for the disparity.  In other words, Manheim has "not establish[ed] that there is no genuine issue of material fact as to

its affirmative defense." *See Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 597 (11th Cir. 1994).

Manheim asserts that factors other than sex—prior salary and prior experience—justified the pay disparity between Bowen and her male predecessor. The predecessor worked for Manheim for six years before his promotion to arbitration manager, he had prior managerial and mechanical experience, and he earned $46,350 per year at Manheim before the promotion. In contrast, Bowen worked for Manheim for only three years before her promotion to arbitration manager, she had limited prior managerial and mechanical experience, and she earned around $26,000 per year at Manheim before the promotion.

Although Manheim "may successfully raise the affirmative defense of 'any other factor other than sex' if [it] proves that [it] relied on prior salary and experience," *see Irby*, 44 F.3d at 955, a reasonable jury could find that Manheim has failed to make such a showing. Manheim did not simply pay Bowen's male predecessor a much greater starting salary; it set the predecessor's salary near the midpoint of the compensation range for arbitration managers[1] but consistently set Bowen's salary at the bottom of the range. A jury could find that prior salary and prior experience alone do not explain Manheim's disparate approach to Bowen's salary over time. Once Bowen established herself as an effective arbitration

---

[1] The predecessor's final salary (in 2005), for example, was over $47,000. That amount approached even the 2007 midpoint salary for arbitration managers.

manager, prior salary and prior experience would not seem to justify treating her different than the predecessor. *See Mulhall*, 19 F.3d at 596 ("Assuming some truth underlies defendants' assertion [that legitimate reasons justified plaintiff's initial lower pay], we are still unable to explain defendants' failure to at some point raise plaintiff's pay to match or exceed that of the comparators when [plaintiff performed exceptionally].").  And further undercutting Manheim's affirmative defense, the evidence indicates that Manheim's general managers "were influenced by [sex] bias." *See Steger*, 318 F.3d at 1078.  The evidence indicates that they took sex into account when considering personnel matters.  Peoples's affidavit testimony establishes that sex-based pay disparities were common at Manheim, that the managers refused to remedy the disparities, and that the managers repeatedly exhibited an unwillingness to treat women equally in the workplace.[2]

## B. Title VII

"Discrimination claims brought under Title VII . . . are typically categorized as either mixed-motive or single-motive claims." *Quigg v. Thomas Cty. Sch. Dist.*,

---

[2] We can consider Peoples's affidavit testimony about these issues at this stage in the proceedings. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) ("[We] may consider [evidence] in passing on a motion for summary judgment if the [evidence] could be reduced to admissible evidence at trial or reduced to admissible form." (internal quotation marks omitted)).  First, the testimony is based on Peoples's personal knowledge:  she reviewed Manheim's payroll records and identified sex-based pay disparities, she spoke directly to the general managers about the disparities, and the managers made comments in her presence about their preferences for male employees.  Second, the testimony is not inadmissible hearsay.  The statements by the managers are "statements made by a supervisory official who play[ed] some role in [employment] decision[s]," and those types of statements are "generally admissible." *See Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997) (per curiam).

814 F.3d 1227, 1235 (11th Cir. 2016).  A plaintiff "can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, was a motivating factor for an adverse employment action, even though other factors also motivated the action."  *Id.* (quoting 42 U.S.C. § 2000e–2(m)).  To avoid summary judgment, a plaintiff raising a mixed-motive claim must offer "evidence sufficient to convince a jury that: (1) the [employer] took an adverse employment action against [her]; and (2) a protected characteristic was *a* motivating factor for the [employer]'s adverse employment action."  *Id.* at 1239 (emphasis in original) (internal quotation marks omitted).

Bowen raises a mixed-motive claim, arguing that she has presented sufficient evidence for a reasonable jury to conclude that her sex was a motivating factor for the pay disparity between her and her male predecessor.  Bowen is entitled to proceed to trial on this claim.  First, disparate pay is an adverse employment action under Title VII.  *See Mulhall*, 19 F.3d at 598.  Second, as discussed above, Bowen has offered evidence from which a jury could find that her sex "was *a* motivating factor" for the pay disparity.  *See Quigg*, 814 F.3d at 1239 (emphasis in original) (internal quotation marks omitted).

## IV. CONCLUSION

We reverse the district court's grant of summary judgment on Bowen's Equal Pay Act and Title VII sex discrimination claims.  Taking the evidence in the

10

light most favorable to Bowen, a reasonable jury could find that (1) Manheim has not established its affirmative defense to Bowen's Equal Pay Act claim and (2) Bowen's sex was a motivating factor for the pay disparity between her and her male predecessor.

**REVERSED AND REMANDED.**