[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13133

_____

D.C. Docket No. 2:17-cv-00041-SPC-MRM

CONTINENTAL 332 FUND, LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC,
CONTINENTAL 245 FUND LLC,

Plaintiffs - Counter Defendants
Appellants,

versus

DAVID ALBERTELLI,, et al.,

Defendants,

ALBERTELLI CONSTRUCTION INC.,

Defendant - Counter Claimant
Counter Defendant,

BROOK KOZLOWSKI,
GREGORY HILZ,

Defendants - Appellees,

WESTCORE CONSTRUCTION, LLC, et al.,

Defendants - Counter Claimants,

CONTINENTAL DEVELOPMENT COMPANY, INC., et al.,

Counter Defendants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 28, 2021)

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

NEWSOM, Circuit Judge:

This appeal requires us to consider a real-estate developer's RICO claim. Continental Properties Group, Inc. awarded contracts to Westcore Construction LLC, a general contractor formed by Gregory Hilz. Westcore allegedly breached these contracts, providing incomplete and defective work. Continental sub-entities filed suit against Westcore and its employees, including Hilz, alleging fraud, conspiracy, and RICO claims. As relevant here, the district court granted Hilz's motion for summary judgment on the RICO claim, concluding that the sub-entities hadn't shown the requisite two predicate acts of racketeering. After careful review and with the benefit of oral argument, we affirm.

2

**I**

Continental develops apartment complexes. Angelo Eguizabal, a vice president at Continental, selected general contractors for construction projects, one of which was Albertelli Construction, Inc. Albertelli Construction, founded and owned by George Albertelli, performed commercial construction work. David Albertelli, George's son (hereafter, "Albertelli"), was a principal of Albertelli Construction. Around 2011, Eguizabal began steering contracts to Albertelli Construction and allegedly received substantial bribes for doing so. After a while, Continental stopped awarding contracts to Albertelli Construction on account of poor performance.

Albertelli sought to remedy that problem. He approached Gregory Hilz about forming Westcore, a company that would earn contracts from Continental without Albertelli's visible involvement. Hilz founded Westcore in 2015, setting up a 70/30% ownership split between Albertelli and himself, respectively. Albertelli then introduced Hilz to Eguizabal.

Around that time, Albertelli emailed Hilz, stating, "[p]lease make sure . . . your [LinkedIn page] is pretty clean of most things or take it down for the short term." 2017, Hilz's LinkedIn page stated that he had been Managing General Partner of Westcore Construction LLC from February 2014 to the present, although Hilz hadn't formed Westcore until 2015; in 2017, Hilz's LinkedIn page

3

also stated that he had been Managing Partner at Devcon Hospitality Partners from 1997 to the present, although Hilz also formed that company in 2015. Albertelli's email to Hilz added:

> Westcore: you are the president; 19 yr company; you've been with them since 2009; company is growing since the recession ended and should do around 200MM this year. Condo project in san diego (22 story); some commercial, student housing, assisted living and memory care etc. Apartments in California for irvine companies. Colorado experience: distribution facility in Denver, assisted living in colorado springs, hotel and retail coming up in deer valley.

In 2015, Westcore provided Continental with a qualification statement detailing its experience and credentials. The parties dispute the extent to which Westcore provided false information in the qualification statement. Approximately one month after Westcore sent the qualification statement, Albertelli emailed Hilz, reminding him to "save to your computer, print to pdf and then scan every page just to make sure my name doesn't show up[.]" Continental soon began contracting with Westcore.

In February of 2016, Continental requested that Westcore describe its experience in Denver, Colorado. Hilz forwarded Continental's request to Albertelli, who responded, "I don't really have any. I would say let's provide him with the Residences at Little Nell and I'll look [sic] pick an apartment complex off of the internet." On March 2, 2016, Hilz responded to Continental's request by

4

naming two apartment complexes and two custom home projects that Westcore hadn't built.

Westcore soon fell apart. Albertelli began feuding with—and eventually terminated—Hilz in 2017. In response, Hilz left a voicemail for a Continental employee informing him of Eguizabal's bribes. Meanwhile, Continental issued notices of default to Westcore on several projects, citing Westcore's incomplete and defective work.

Continental-controlled limited liability corporations that hold individual apartment complex projects (hereinafter "the Funds") filed suit in federal court. The Funds' operative complaint alleged three counts against Hilz: fraud (Count 22), conspiracy to commit fraud (Count 23), and a RICO violation (Count 24). Hilz moved for summary judgment on each of the counts asserted against him.

As relevant here, the district court granted Hilz's motion with respect to the RICO count. The district court concluded that the Funds hadn't shown the two predicate acts required to bring a RICO claim. As an initial matter, the court held that "[m]ere knowledge of a bribery scheme" wasn't enough to establish bribery—the first alleged predicate act. Next, the court held that the Funds had presented evidence of only one predicate act involving wire fraud—specifically, the qualification statement. The district court rejected the Funds' other wire-fraud-related predicate acts. With respect to Hilz's LinkedIn page, the court held that

"nondisclosure of material information can underpin a wire fraud claim only when the defendant has a duty to disclose"—which it found Hilz lacked.  As for Hilz's March 2, 2016 email regarding Westcore's experience in Denver, Colorado, the court determined that the Funds hadn't carried their evidentiary burden.  Separately, the district court rejected the Funds' reliance on RICO's conspiracy provision, 18 U.S.C. § 1962(d), holding that their RICO count contained no conspiracy allegations.  The Funds moved for reconsideration of the district court's order on the RICO claim; the district court denied the motion.  The Funds now appeal the district court's grant of summary judgment, as well as the district court's denial of their motion for reconsideration.[1]

## II

This appeal raises three issues: whether (1) the Funds have established that Hilz committed two predicate acts of racketeering, (2) the Funds may rely on RICO's conspiracy provision and thus bypass the predicate-act requirement, and

---

[1] We review de novo the district court's grant of summary judgment, drawing all reasonable inferences in the light most favorable to the non-moving party.  *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018).  We review the denial of a motion for reconsideration for an abuse of discretion.  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir. 2004).

(3) the district court erred in denying the Funds' motion for reconsideration. We address these issues in turn.

## A

First, the Funds contend that Hilz committed multiple predicate acts, including wire fraud and bribery. RICO creates civil liability for a "person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §§ 1962(c), 1964(c). Thus, in order to establish a federal civil RICO violation under § 1962(c), the Funds "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (quotation marks omitted).

To meet the third and fourth elements and demonstrate a pattern of racketeering activity, the Funds must show that Hilz committed at least two acts of racketeering—known as "predicate acts." *United States v. Browne*, 505 F.3d 1229, 1257 (11th Cir. 2007). A predicate act "includes any of a long list of state and federal crimes"—including, as relevant here, wire fraud and bribery. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020); 18 U.S.C. § 1961(1). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Petland*, 972 F.3d at 1215.

Before jumping into the merits, we pause briefly to emphasize this Circuit's interpretation of Federal Rule of Civil Procedure 15, which, for reasons we will explain, bears on both the Funds' substantive RICO claim and the RICO conspiracy claim. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "At the summary judgment stage," though, "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (same).

## 1

We first consider whether the Funds have established that Hilz committed any wire-fraud predicates. To establish wire fraud, the Funds must show that Hilz "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or cause[d] the use of . . . wires for the purpose of executing the scheme or artifice." *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007) (quotation marks omitted). On appeal, the Funds identify three predicate acts that they say constitute wire fraud: (1) the preparation and transmission of the qualification statement, (2) Hilz's March 2, 2016 email

8

describing Westcore's experience in Colorado, and (3) Hilz's concealment of Albertelli's role at Westcore.  Hilz doesn't contest on appeal that the Funds presented a genuine issue of material fact on the first alleged predicate act—Hilz's preparation and transmission of the qualification statement.  Accordingly, we need only consider the second and third alleged predicate acts.

We begin with Hilz's March 2, 2016 email.  In the operative complaint, the Funds reference the March 2, 2016 email in the fraud count.  The RICO count generally incorporates the fraud count, but specifically alleges only three RICO predicate acts:

> Hilz committed RICO predicate acts by 1) bribing Eguizabal to cause Westcore [] to get contracts for construction work; 2) defrauding Plaintiffs by submitting a false Qualification Statement and accompanying financials for the purpose of causing Continental to award contracts to Westcore []; and 3) actively concealing David Albertelli's majority ownership of Westcore [] which Hilz knew would automatically disqualify Westcore [] from performing work for Continental.

Notably, the Funds did *not* specify the March 2, 2016 email as a predicate act.  Echoing an argument they made in opposing Hilz's summary judgment motion, the Funds assert on appeal that the three listed predicate acts somehow "encompass[]" the March 2, 2016 email.  We disagree.  The first predicate act concerns bribery, not wire fraud.  The second predicate act—regarding the qualification statement, submitted on November 6, 2015—doesn't relate in any way to Hilz's March 2, 2016 email.  Nor, so far as we can tell, does the third alleged predicate, Hilz's

9

concealment of Albertelli's role at Westcore.  Because the Funds didn't identify the March 2, 2016 email as a predicate act in their complaint—and because, as we have held, they can't amend their complaint through summary-judgment or appellate briefing—we won't consider it as such.

Next, we consider the third alleged wire-fraud predicate—Hilz's concealment of Albertelli's role at Westcore.  The Funds' summary-judgment briefing stated:  "Hilz refutes Plaintiffs' claim for fraudulent non-disclosure on the basis that Hilz did not owe Plaintiffs a duty to disclose, but that is not Plaintiffs' claim.  Plaintiffs' claim is that Hilz actively concealed the involvement of Albertelli in Westcore."  The district court held that the Funds hadn't identified a duty, concluding that "Plaintiffs suggest no basis for such a duty," and that the Funds' "semantic distinction" concerning "active concealment" does "not circumvent the duty requirement."  On appeal, the Funds make a different argument, asserting that a duty to disclose can arise when an individual makes "partial or ambiguous statements that require further disclosure in order to avoid being misleading."  The Funds point to Hilz's half truths about Westcore, made in the qualification statement and on his LinkedIn page, which they say required further disclosure.

Our precedent has held that nondisclosure may underpin a wire-fraud claim "where a defendant has a duty to disclose."  *Am. United Life Ins. Co. v. Martinez*,

10

480 F.3d 1043, 1065 (11th Cir. 2007).  Whether a duty to disclose exists "must be made on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313 (11th Cir. 2000).  And as the Funds say, a duty can arise when an individual makes partial or ambiguous statements that require further disclosure.  *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1360 (11th Cir. 2004).

But neither the qualification statement nor the representations on Hilz's LinkedIn page constitute the sort of half-truths that give rise to a duty to disclose.  First, recall that the parties agree that Hilz's preparation and transmission of the qualification statement qualifies as a RICO predicate act.  Hilz's partial or ambiguous statements in the qualification statement can't also give rise to a duty to disclose, and thereby constitute a separate predicate act of nondisclosure.  Our two-predicate-act requirement doesn't envision that kind of double-counting.  *See Browne*, 505 F.3d at 1257.  Further, the representations on Hilz's LinkedIn page may very well be partial or ambiguous.  But they don't relate in any way to the relevant predicate act alleged—Hilz's concealment of Albertelli's role at Westcore.  The representations appear to be exaggerations (or even outright lies) about Westcore's and Hilz's own experience—not concealment of Albertelli's role at Westcore.  The Funds can't smuggle in predicate acts not alleged in their

11

complaint under the guise of nondisclosure.  The Funds therefore haven't established that Hilz committed multiple acts of wire fraud.

**2**

The Funds also contend that Hilz committed predicate acts of bribery, arguing that "Hilz knowingly and substantially assisted the principal RICO violation of causing Continental to award business to Albertelli-controlled entities through a kickback arrangement with Eguizabal."  The Funds emphasize Hilz's lies to Continental about Albertelli's role at Westcore.

Under applicable statutes, a person commits a bribery offense if he, among other things, "offers, confers, or agrees to confer any benefit," Tex. Penal Code § 32.43, or "solicits, accepts, or agrees to accept any benefit," Colo. Rev. Stat. § 18-5-401.  Further, a person may be held liable if he or she assists or intends to assist another in the commission of bribery.[2]

---

[2] Under Texas law, a person is liable for an offense committed by another if "(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;  or (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense."  Tex. Penal Code § 7.02(a).  Under Colorado law, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."  Colo. Rev. Stat. § 18-1-603.

The Funds haven't established that Hilz assisted or intended to assist in any bribery offense. The record corroborates the Funds' account that Eguizabal may have received bribes. But two facts bear on Hilz's possible role in any bribery. First, Albertelli introduced Hilz to Eguizabal in 2015. Second, Hilz spoke with Westcore manager John Salat immediately after Hilz's termination. Hilz told him that he "didn't like" the concept of paying Eguizabal "in the first place," and that he had instructed Albertelli *not* to pay Eguizabal. At most, each of these facts suggest that Hilz knew that bribery occurred—not that he assisted or intended to assist in it, as aiding-and-abetting liability requires. Further, the Funds haven't identified any specific acts of concealment by Hilz that demonstrate that he assisted or intended to assist in the alleged bribery. The Funds thus haven't established that Hilz committed the predicate offense of bribery.

\*     \*     \*

Because the Funds have only shown one predicate act of racketeering, they can't succeed on their substantive RICO claim. The district court therefore didn't err in granting summary judgment for Hilz on the Funds' substantive RICO count.

**B**

The Funds argue in the alternative that Hilz is liable for participating in a RICO conspiracy under 18 U.S.C. § 1962(d). The Funds contend that if a plaintiff "can prove an agreement on an overall objective, it need not prove a defendant

13

personally agreed to commit two predicate acts." The Funds first invoked §

1962(d) in their surreply to Hilz's motion for summary judgment. In granting

summary judgment for Hilz on the RICO claim, the district court concluded:

"Plaintiffs argue in their Surreply that Count 24 charges Hilz with violations of

both 18 U.S.C. § 1962(c) and (d) . . . Count 24 contains no conspiracy allegations,

nor does it incorporate conspiracy allegations from elsewhere in the [operative]

[c]omplaint."

Section 1962(d) states that "[i]t shall be unlawful for any person to conspire

to violate any of the provisions of subsection (a), (b), or (c) of this section." 18

U.S.C. § 1962(d). "To establish a RICO conspiracy violation under 18 U.S.C.

§ 1962(d), the government must prove that the defendants objectively manifested,

through words or actions, *an agreement* to participate in the conduct of the affairs

of the enterprise through the commission of two or more predicate crimes." *United

States v. Green*, 981 F.3d 945, 952 (11th Cir. 2020) (quotation marks omitted,

emphasis in original). We have acknowledged that a party "may be liable for

RICO conspiracy even if it is not liable for the substantive RICO offense."

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). But "the

elements of a RICO conspiracy focus on the *agreement* to commit a crime[.]"

*Green*, 981 F.3d at 952 (emphasis in original).

14

As already explained, "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)," and "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315; *see also White*, 789 F.3d at 1200. That rule is also relevant here. The operative complaint didn't cite the provision giving rise to RICO conspiracy claims—§ 1962(d). That alone doesn't necessarily mean that the Funds' § 1962(d) claim is "new," and thus an impermissible attempt to amend their pleadings. But the Funds expressly grounded their RICO claim in "[t]he fraudulent actions of Gregory Hilz described in [the fraud count], together with the allegations identified below." Neither the fraud count, the paragraphs that the fraud count incorporates, nor the RICO count itself contains any version of the word "conspire." The closest the Funds came to alleging conspiracy is the fraud count's allegation that "Hilz was a [p]art of the *[b]ribery [s]cheme*." But the discussion of the bribery scheme in the fraud count and its incorporated paragraphs lack any allegation of an agreement—the distinguishing feature of a conspiracy claim.

The RICO count itself contains little direct suggestion of a conspiracy or agreement. Instead, the RICO count references a "Corrupt Enterprise":

> As alleged in paragraph 51, Hilz was a part of the Corrupt Enterprise. The purpose of the Corrupt Enterprise is alleged in paragraph 53. Hilz['s] role in the Corrupt Enterprise included creating and submitting the false Qualification Statement, fraudulently concealing

15

the involvement of David Albertelli in Westcore [], and bribing Angelo Eguizabal to obtain work for Westcore []. The allegations in support of those actions are included in [the fraud count] and the other paragraphs incorporated therein, all of which are incorporated by reference into this [RICO count].

The Funds didn't incorporate or even reference paragraph 52 of the operative complaint in the RICO count, but, lying between the referenced paragraphs 51 and 53, it is instructive: "All *Defendants*, as participants in the Corrupt Enterprise, *conspired* to engage and engaged in a pattern of racketeering activity across state lines involving numerous RICO predicate acts over a period of approximately six years." Paragraph 51 makes clear that Hilz is defined as a "non-Defendant[]" in the operative complaint. The earlier portions of the operative complaint thus suggest that Hilz was part of the "Corrupt Enterprise"—not any conspiracy involving the defendants.

Most importantly, the Funds opted (for whatever reason) not to incorporate the allegations of their state-law conspiracy claim. Those allegations stated unequivocally that "Gregory Hilz conspired with David Albertelli" and others to defraud the Funds. The Funds could have grounded their RICO claim on the allegations made in the state-law conspiracy claim, but they didn't. The Funds' reliance on § 1962(d) thus constitutes an impermissible post hoc attempt to amend

16

their complaint. Accordingly, the district court didn't err in determining that the Funds may not rely on § 1962(d).[3]

C

The third and final issue is whether the district court abused its discretion in denying the Funds' motion for reconsideration. Reconsideration is appropriate in civil cases when there is "newly-discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). The Funds identify what they claim to be two errors in the district court's denial of their motion for reconsideration. First, they contend that the district court should have considered evidence regarding the March 2, 2016 email. Second, they argue that the district court overlooked the allegations incorporated into the RICO count that involved conspiracy.

Neither of these amounts to an error warranting reconsideration. First, the district court acknowledged that it "should have considered" the evidence indicating that the March 2, 2016 email included misrepresentations. As already explained, though, the operative complaint listed three predicate acts but failed to include the March 2, 2016 email. The district court thus properly recognized that consideration of the email's illegality "would not have changed the outcome."

---

[3] Because the Funds may not proceed on claims under §§ 1962(c) and (d), we needn't consider whether Hilz's RICO violations were the proximate cause of the Funds' damages.

Second, the district court didn't make any error in failing to consider the Funds'

conspiracy claim. As we have explained, neither the RICO count itself, nor the

counts incorporated therein, used any version of the word "conspire." The Funds

also pleaded a state-law conspiracy count and simply chose not to incorporate that

count in the RICO count. The district court didn't abuse its discretion in denying

the Funds' motion for reconsideration.

## III

In summary, we conclude that (1) the Funds haven't established that Hilz

committed two predicate acts of racketeering, (2) the Funds' reliance on § 1962(d)

constitutes an impermissible post hoc attempt to amend their complaint, and (3) the

district court didn't abuse its discretion in denying the Funds' motion for

reconsideration.

**AFFIRMED.**