[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12439

Non-Argument Calendar

_____

SUSAN DENHAM,
Dr.,

                                        Plaintiff-Appellant,

*versus*

ALABAMA STATE UNIVERSITY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:22-cv-00185-SMD

_____

Before BRASHER, ABUDU, and TJOFLAT, Circuit Judges.

PER CURIAM:

In this failure-to-promote discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, Dr. Susan Denham, a white female, claims that her former employer, Alabama State University (ASU), discriminated against her on account of her race and sex in denying her a promotion to the Associate Dean position in ASU's College of Health Sciences (COHS). A Magistrate Judge (MJ) granted ASU summary judgment, and Denham appealed.[1] Our task, consequently, is to determine whether the MJ correctly applied the summary judgment standard to the evidence presented. Holding that he did, we affirm.

## I.  Background

### A.  *The Associate Dean Position*

On November 19, 2019, ASU posted a job listing advertising a vacancy for the Associate Dean in ASU's COHS. The position required that applicants have the "[e]xperience and credentials to qualify for the rank of associate professor . . . in one of the College's academic departments." Under ASU's Faculty Handbook,

_____

[1] Both parties consented to a Magistrate Judge conducting all proceedings. *See* 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . .").

this meant "five academic years of successful teaching experience at an accredited college/university," including three years as an "assistant professor." The Handbook also provided exceptions to these requirements:

> B. Upon recommendation of the Provost and Vice President for Academic Affairs, the president may recommend to the Board of Trustees the assignment of academic rank for a new member of the faculty who serves in a combination of teaching and administrative roles.
>
> C. Upon recommendation of the dean of the college involved and the Provost and Vice President for Academic Affairs, the president may recommend to the Board of Trustees the assignment of academic rank for a new member of the faculty solely on the basis of extraordinary and distinguished national service to the teaching field.

Dr. Susan Denham, a white female, and Dr. Dartrell Treadwell, an African–American male, both applied for the Associate Dean position. At the time of her interview, Denham was a tenured professor within the COHS, with over two decades of experience in various roles. Denham holds a Bachelor of Science in Occupational Therapy, a Master of Science in Human Resources Management, and a Doctorate in Educational Leadership, Policy, and Law. She has been a licensed occupational therapist since 1990.

At the time of Treadwell's interview, he had one year of experience as an assistant professor in Arkansas State University's

physical therapy department.  He managed acute inpatient hospital, geri-psych, and outpatient departments; supervised a team of eighty therapists across nine nursing facilities; and established a home health service business offering physical and occupational therapy.  Treadwell holds a Master's in Public Service Management and a Doctorate in Physical Therapy.

Dr. Carl Pettis, an African–American male, conducted interviews for the position and interviewed Denham and Treadwell. Pettis serves as ASU's Provost and Vice President for Academic Affairs.  Following the interviews, Pettis recommended Treadwell for the position, resulting in Treadwell's appointment.

On April 20, 2022, Denham sued ASU, arguing that she was passed over for Associate Dean due to her race and gender.  The complaint was framed in one count under Title VII.[2]  ASU answered, denied liability, and, after discovery, moved the District Court for summary judgment.

In its motion, ASU argued that Treadwell's selection was based on legitimate, nondiscriminatory reasons.  ASU asserted that Treadwell met the minimum qualifications for the position outlined in the job posting and that his interview and experience made him the preferable candidate.

---

[2] *See* 42 U.S.C. § 2000e–2(a)(1) (declaring it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race [or] sex.").

In response, Denham sought to prove her case through (1) the *McDonnell Douglas* framework, (2) the "convincing mosaic" standard, and (3) a mixed-motive framework. Denham argued that ASU's proffered reasons for hiring Treadwell were pretext because she was more qualified for the position than Treadwell and Pettis's subjective reasons for choosing Treadwell could reasonably be disbelieved.

Ultimately, the MJ granted ASU's motion. Under the *McDonnell Douglas* framework, the MJ found that Denham established a prima facie case and that ASU provided a legitimate, nondiscriminatory reason for its decision. Still, Denham failed to create a genuine issue of material fact about whether ASU's proffered reasons were a pretext for discrimination.

Denham timely appealed.

## II.  Legal Standard

We review de novo a grant of summary judgment, drawing all reasonable inferences in the light most favorable to the nonmoving party. *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bowen*, 882 F.3d at 1362 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. Discussion

Denham advanced three theories for her Title VII claim: *McDonnell Douglas*, convincing mosaic, and mixed-motive. On appeal, Denham argues that the MJ failed to view the evidence in the light most favorable to her. Denham asserts that the evidence shows that (1) Treadwell did not meet the minimum qualifications for the Associate Dean position and (2) Pettis's proffered reasons for hiring Treadwell are a pretext for discrimination.

#### A. McDonnell Douglas

Under *McDonnell Douglas*, the plaintiff's first task is establishing a prima facie case of discrimination. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Once established, the burden shifts to the employer to provide a nondiscriminatory basis for its decision. *Id.* at 767–68. "If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* at 768.

#### 1. Denham's Prima Facie Case

To establish a prima facie case, the plaintiff must show (1) she "belonged to a protected class," (2) she "was qualified for and applied for a position the employer was seeking to fill," (3) she was rejected despite her qualifications, and (4) "the position was filled with an individual outside the protected class." *Id.* ASU does not dispute that Denham established a prima facie case of discrimination. Thus, for purposes of summary judgment, we assume that Denham is in a protected class, applied and was qualified for

Associate Dean, was rejected for the position despite those qualifications, and Trewadwell was outside her protected class.

## 2. ASU's Burden of Production

An employer's burden to proffer a nondiscriminatory reason for failing to promote an employee is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). Once an employer provides a clear and reasonably specific nondiscriminatory reason for its actions, it has met its burden of production. *Vessels*, 408 F.3d at 770. ASU's proffered reasons for hiring Treadwell are that Treadwell interviewed better than Denham and possessed the clinical experience ASU sought for the position. We hold that these reasons are sufficient for ASU to have met its burden of production. Consequently, our focus shifts to determining whether these proffered reasons are pretext.

## 3. Evidence of Pretext

Denham argues that she has raised a genuine issue of material fact about ASU's proffered reasons for hiring Treadwell. To show pretext, and thus survive summary judgment, the plaintiff must introduce significantly probative evidence allowing a reasonable fact finder to determine that the employer's proffered reasons are not believable. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006). This can be done by pointing to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons. *Id.*

### i. Treadwell's Qualifications for Associate Dean

First, Denham asserts that Treadwell did not qualify for Associate Dean. Denham argues Pettis improperly relied on the exceptions outlined in ASU's Faculty Handbook to recommend Treadwell. She contends that Pettis unreasonably concluded that Treadwell's clinical experience qualified as "extraordinary and distinguished national service to the teaching field."

To qualify for Associate Dean, a candidate must possess the experience and credentials to qualify for the rank of associate professor. This includes five years of successful teaching at an accredited college or university, with at least three of those years at the assistant professor level. Treadwell, with only one year of teaching experience as an assistant professor, did not meet this requirement.

Still, the ASU Faculty Handbook permits the Provost and Vice President, here, Pettis, to recommend candidates based on alternative criteria: (1) if the candidate serves in both teaching and administrative roles, or (2) if the candidate has provided "extraordinary and distinguished national service to the teaching field." Pettis relied on these exceptions to recommend Treadwell.

Denham has not provided evidence to challenge Pettis's justification for relying on these exceptions. Pettis testified to Treadwell's "extraordinary and distinguished national service to the teaching field," emphasizing his clinical experience and its relevance to ASU's student placements nationwide. Pettis testified that

he considered Treadwell's managerial experience in physical therapy a significant contribution to the teaching field because of the clinical component of several of the COHS's programs.

"We are not in the business of adjudging whether employment decisions are prudent or fair." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999). "[O]ur sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Id.* And Denham has not provided evidence that unlawful discriminatory animus motivated Pettis's recommendation.

Denham's attempt to compare her case to *Bass v. Board of County Comm'rs*, 256 F.3d 1095 (11th Cir. 2001), is not convincing. In *Bass*, this Court found sufficient evidence to overcome a summary judgment motion where the employer promoted an unqualified candidate over a qualified one. *Id.* at 1109. But the employer there also had a history of promoting employees based on race, made a statement about race-conscious efforts, and deviated from established procedures. *Id.* at 1105–09. In contrast, Treadwell was qualified based on Pettis's application of the exceptions in the Handbook, and none of the other factors in *Bass* apply.

Denham also likens her situation to *Carter v. Three Springs Residential Treatment*, 132 F.3d 635 (11th Cir. 1998). She argues that circumventing established procedures can indicate pretext. *See id.* at 644. This comparison also falls short. In *Carter*, the plaintiff provided evidence that the employer failed to adhere to its policy of

posting job vacancies and he submitted ten affidavits of former employees recounting instances of disparate treatment while on the job. *Id.* at 640–41. Denham, on the other hand, has not provided evidence suggesting that "established rules were bent or broken to give [Treadwell] an edge in the hiring process." *See id.* at 644.

Further, we cannot say that the disparity in Denham's and Treadwell's qualifications is "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Treadwell. *See Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (quoting *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 12554 (11th Cir. 2000)). Merely showing that the plaintiff was more qualified than the selected candidate is not enough to show pretext. *Id.* Rather, the disparity must be "so apparent as virtually to jump off the page and slap you in the face." *Id.* (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir.2001)). Denham argues that she had twenty-nine years of clinical experience, while Treadwell had around fifteen—this does not jump off the page.

ii. ASU's Proffered Reasons for Selecting Treadwell

Denham also argues that Pettis's subjective reasons for choosing Treadwell were pretext. These reasons are that (1) Treadwell performed better in his interview, and (2) Pettis valued Treadwell's clinical and managerial experience.

Under *McDonnell Douglas*, a subjective reason for an employer's decision, such as a candidate's poor interview performance, can be a legitimate, nondiscriminatory reason. *Chapman v. AI Transp.*, 229 F.3d 1012, 1033 (11th Cir.2000) (en banc). Indeed,

"[a]n interview is frequently necessary to asses the qualities that are particularly important in supervisory or professional positions." *Bass*, 256 F.3d at 1106. That said, the employer must provide a clear and reasonably specific factual basis supporting its subjective opinion for it to be legally sufficient. *Id.*

Denham contends that Pettis failed to provide a sufficient factual basis for his subjective opinions. We disagree. Pettis testified to his impressions of Treadwell's interview, noting Treadwell's considerable "energy" and "passion," his focus on student engagement, and his eagerness to establish a strong rapport with students. Pettis believed Treadwell's energy would be positively received by students, and he would be a bonus to the faculty. These are clear and reasonably specific factual bases. *See Chapman*, 229 F.3d at 1034 ("[I]t might not be sufficient for a defendant employer to say . . . 'I did not like his appearance' with no further explanation. However, if [it] said, 'I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders' . . . the defendant would have articulated a 'clear and reasonably specific' basis for its subjective opinion—the applicant's bad (in the employer's view) appearance.").

In *Chapman*, the employer's articulated reason for its employment action was partly based on the employee's poor interview. 229 F.3d at 1033. We noted that the employer had provided a clear and reasonably specific rationale for considering it a poor interview. *Id.* at 1035. The applicant, however, failed to show that

a poor interview was pretext because he did not counter the "objective bases for the subjective reason proffered for not hiring him." *Id.* at 1036. The employer critiqued the applicant for not asking questions during the interview, not explaining his past employment history, and not providing concise answers to the questions posed. *Id.* Without disputing these points, the applicant could not demonstrate that the employer's justification was a pretext, and this Court affirmed. *Id.* at 1037.

Denham has failed to offer evidence to rebut Pettis's testimony. Like the applicant in *Chapman*, Denham produced no affidavits or other evidence to dispute Pettis's preference for Treadwell based on the interview. Her sole contradiction of Pettis's account—that she responded "Why not?" when asked why she applied for the position—does not adequately address the detailed reasons Pettis provided for his decision Denham could have offered affidavits highlighting her interview strengths, that Pettis did not bring energy or passion, or statements indicating Pettis had biases. But she failed to present such evidence.

Further, Denham has not successfully demonstrated that Pettis's preference for Treadwell's clinical experience over hers constitutes a pretext. Pettis's testimony provided a clear and specific rationale for this preference: Pettis viewed Treadwell's clinical and leadership experiences as beneficial for students during their clinical rotations and valuable for the Associate Dean role. Pettis agreed that Denham had solid experience but highlighted Treadwell's lead-

ership in supervising a large team of therapists and managing multiple skilled nursing facilities as key factors in his decision. Denham did not contest Treadwell's possession of significant clinical experience, nor did she claim that her own experience was valued by Pettis.

### B. Convincing Mosaic

Denham also argues that the MJ erred in finding that she failed to create a triable issue of fact under the convincing mosaic theory. Under this theory, a plaintiff can defeat a summary judgment motion by presenting a "convincing mosaic" of circumstantial evidence that "raises a reasonable inference that the employer discriminated against [her]." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A convincing mosaic can be established by pointing to evidence that demonstrates: (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred; (2) systematically better treatment of similarly situated employees; and (3) pretext. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Like her *McDonnell Douglas* argument, she contends that a proper application of the evidence would have shown that (1) Treadwell was unqualified for the position, (2) Denham had superior qualifications, and (3) Pettis's subjective reasons for choosing Treadwell were pretextual. As discussed, Denham has not provided evidence to challenge Pettis's reliance on the Handbook's exceptions for recommending Treadwell, the disparity in qualifications

between Denham and Treadwell is not enough to suggest discrimination, and Denham has not shown that Pettis's reasons for hiring Treadwell were pretextual. Therefore, we are not convinced she has presented a convincing mosaic of evidence that would raise a reasonable inference of discrimination.

### C. Mixed-Motive

Last, Denham argues that the MJ erred in finding that she did not create a triable issue of fact under a mixed-motive theory. In mixed-motive cases, at summary judgment, a plaintiff must produce evidence sufficient to convince a jury that the employer took an adverse employment action against the plaintiff and that a protected characteristic was a motivating factor for the adverse employment action. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1232–33 (11th Cir. 2016); *see also* 42 U.S.C. § 2000e-2(m).

Denham's argument, under a mixed-motive theory, reiterates her previous claims that Treadwell was unqualified, Denham had superior qualifications, and Pettit's subjective reasons for choosing Treadwell were pretextual. We reject these arguments because, as discussed above, Denham has not provided evidence sufficient to show that her race or sex was a motivating factor in ASU's decision to hire Treadwell.

### Conclusion

For the reasons discussed above, the MJ's order granting ASU summary judgment is

**AFFIRMED.**